IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IRVIN ROGER DALEY, III, #334-856,    *
        Plaintiff,

                                  *

    v.                       CIVIL ACTION NO. WDQ-06-2255

                                  *

CORRECTIONAL MEDICAL SERVICES, et
al.,[1]                          *
        Defendants.

                             ******

## MEMORANDUM

Before the Court is a pro se complaint filed under 42 U.S.C. §1983 by Plaintiff Irvin Roger Dailey, III, then and presently incarcerated at the Roxbury Correctional Institution in Hagerstown (RCI).[2] Defendants Correctional Medical Services, Inc. ("CMS"), and Harold Tritch, M.D., by their counsel have filed a dispositive Motion to Dismiss or, in the Alternative, for Summary Judgment with supporting exhibits (Paper No. 11), [3] which Plaintiff has opposed.  (Paper No. 13).  Upon review of the pleadings, exhibits, and applicable law, the Court will grant Defendants' Motion.  No hearing is necessary. *See* Local Rule 105.6.  (D. Md. 2004).

**I. Background**

Plaintiff filed this action on August 29, 2006, seeking money damages and alleging that Defendants had improperly treated a broken finger, in part because they delayed applying a splint.

---

[1]The Clerk shall amend the docket to reflect the full and correct spelling of Defendant Harold Tritch's name.

[2]On September 22, 2006, Plaintiff was released from RCI into the temporary custody of Pennsylvania authorities.  Plaintiff has since been returned to Maryland and RCI.

[3]Defendants rely on materials beyond the scope of the Complaint, and their motions shall be construed pursuant to Fed R. Civ. P. 56.

Plaintiff states that he injured his finger the morning of May 27, 2006, at which time he was told by the nurse at the medication dispensary window to put in a sick call slip to request treatment. (Paper No. 1, Statement of Claim).  The following day, the nurse at the window told him to put ice on the finger.  He was seen on June 5, 2006, by a nurse who told him to bend the finger.  Subsequent trips to the medication window over the next nine days resulted in no treatment for the injury, despite complaints of pain.  Plaintiff claims he was not seen until June 15, 2006, when a physicians' assistant (PA) refused to treat his finger.  On June 16, 2006, an x-ray revealed a bone fragment. Despite repeated requests for treatment and complaints of pain, he was not seen again until July 25, 2006, when a PA gave him pain relief cream and Ibuprofin.[4]  Additional pain medications were given again on July 27, 21006, and four days later he was transported to a neighboring prison for an x-ray but was returned because an x-ray technician was not available.  On August 4, 2006, an x-ray was taken, and on August 9, Plaintiff was seen by Defendant Tritch, who used a tongue depressor  to splint the finger, causing further pain.  Defendant replaced the splint on August 11, 2006, and on August 23, 2006, Plaintiff was provided the necessary materials to prepare his own replacement splint.  (*Id.*).

Counsel for the Medical Defendants has submitted the declaration of Dr. Kailash  Chopra, M.D., and verified exhibits, including Plaintiff's medical records.  According to Dr.Chopra's declaration, Plaintiff first submitted a sick call slip on June 5, 2006, indicating he had injured his finger a week earlier.  (Paper No. 11, Exhibit A).  CMS personnel received the slip on June 7, 2006, and on June 13, 2006, a registered nurse examined Plaintiff and found a bent index finger that could be straightened only with help from the other hand.  The tip of the finger was slightly reddened,

---

[4]Plaintiff states that he was given medications under other prisoners' commitment numbers on several occasions in early August, 2006.  He does not indicate the type of medication received.

swollen, and warm.  Plaintiff was instructed to continue to bend the finger manually and was given Tylenol for pain.  The nurse also scheduled him for evaluation by a PA.  (*Id.*, Exhibit B at 1).  The PA examined Plaintiff two days later, noting that the fingertip (or distal interphalangeal) had good circulation but was red, swollen and angulated.  The finger tip could be manually moved, but plaintiff could not move it on his own.  The PA concluded Plaintiff could have a dislocation of the distal interphalangeal (DIP) joint and referred him to the Maryland Correctional Institution-Hagerstown (MCI-H) for an x-ray and possible reduction by the orthopedic nurse practitioner.  The x-ray showed a small anterior avulsion fracture of the DIP joint.[5]  Plaintiff was told to perform passive range of motion on the finger for two weeks, given Indocin, a non-steroidal anti-inflammatory medication for pain, and advised to seek follow-up treatment at the next orthopedic clinic.  (*Id.*, Exhibit B at 2-3, 11 and 14).

A PA again examined Plaintiff on July 25, 2006, noting the DIP joint remained mildly swollen, reddened and angulated.  The PA concluded the fracture was healing, but ordered another x-ray and scheduled Plaintiff for follow-up to splint the finger.  (*Id.*, Exhibit B, pp. 4 and 12). Another x-ray was taken on August 7, 2006, showing the fracture had not fully healed and that soft tissue swelling over the fracture remained. (*Id.*, Exhibit B at 5).

On August 9, 2006, Defendant Tritch examined Plaintiff in the Medical/Surgical Clinic, and splinted the finger with a tongue depressor.  Plaintiff was advised to keep the splint on for several weeks.[6]  (*Id.*, Exhibit B at 6).  A PA examined Plaintiff on August 23, 2006, and gave him additional

---

[5]An avulsion fracture occurs after an injury when a tender on ligament pulls off a piece of bone.  It is generally treated as a soft tissue injury or sprain, with immobilization and intermittent range of motion exercises. *Id.*, Exhibit A, ¶ 4.

[6]Dr. Chopra believes the notation made by Defendant Tritch contained an unintended error, in that splints are typically used for six weeks and not (as noted by Tritch) six months.  *Id.*, Exhibit A, n. 2.

supplies with which to splint the finger.[7]  (*Id.*, Exhibit B at 7).

Plaintiff submitted a sick call slip on September 14, 2006, seeking a medication refill.  He was scheduled for an appointment in the Medical Surgical Clinic for follow-up on the fingertip fracture.  (*Id.*, Exhibit B at 8).  On September 20, 2006, Dr. Chopra evaluated Plaintiff and noted a ten degree bend in the left fingertip.  Dr. Chopra retaped the splint, advised Plaintiff to exercise the tip by wiggling it, and ordered Naprosyn for pain.  (*Id.*, Exhibit B at 9 and 13).  Two days later, Plaintiff was released to the temporary custody of Pennsylvania.  (*Id.*, Exhibit B at 10).

## II.  Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e).  The court should

---

[7]Tongue depressors are used in the prison because commercially available splints contain metal, which is contraband.  Dr. Chopra indicates that such a splint is just as effective as a commercially made splint.  *Id.*, Exhibit A, ¶ 8.

"view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To state a constitutional claim under the Eighth Amendment for denial of medical care, a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted).  "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.*  Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U. S. at 837.

A health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms.  *See Johnson v. Quinones,* 145 F.3d 164, 168 (4th  Cir. 1998). Furthermore,  mere negligence or malpractice does not rise to a constitutional level.  *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). Generally, a  prisoner's disagreement with medical personnel over the course of his treatment does

not constitute a constitutional cause of action.  *See Wright v. Collins*, 766 F. 2d 841, 849 (4th Cir.

1985).

**III.  Analysis**

      **1.  Correctional Medical Services**

      Correctional Medical Services is a private corporation that has contracted with the State of

Maryland to provide medical services to certain state institutions and administers medical care only

through its agents and employees, and may not be held liable  based on respondeat superior given

the facts alleged. 436 U.S. at 691-94.  Plaintiff proffers no evidence that alleged deficiencies in

medical care were based on corporate policy or pattern of practice. The liability attributed to CMS

is vicarious in nature and cannot be raised in a §1983 action.[8]  As a matter of law, CMS is entitled

to summary judgment.

      **2.   Dr. Harold Tritch**

      Upon review of the facts presented here, none of which is in dispute, the Court finds that

Plaintiff has failed to demonstrate how the medical treatment provided by Defendant Tritch

amounted to deliberate indifference to his medical needs.  The record shows that Plaintiff did not

formally complain about the fingertip by filing a sick call slip for nearly a week after he sustained

the injury.   It took an additional week for Plaintiff to be seen by medical personnel once he

submitted a sick call slip, but he received conservative treatment and pain medication at that time.

Two days later, he was seen again and x-rays demonstrated a small anterior avulsion fracture of the

DIP joint.  Treatment included performing passive range of motion exercises and anti-inflammatory

---

[8] For reasons stated herein, even if CMS were vicariously liable, Plaintiff's allegations do not establish a
constitutional violation.

medication for pain.  When the joint remained tender and angulated, a second x-ray series was taken,

revealing that healing was not yet complete.  Dr. Tritch first examined Plaintiff on August 9, 2006,

and splinting was initiated.  Although Dr. Tritch did not examine or treat Plaintiff again, the record

reveals that Plaintiff received additional care and that prior to his transfer to an out-of-state prison,

the finger had improved and could be bent ten percent.

There are no facts presented here to establish that Dr. Tritch or other unnamed CMS medical

personnel acted with deliberate indifference to Plaintiff's medical needs, or that the treatment he

received amounted to constitutionally inadequate care.  Furthermore, the initial delay in obtaining

evaluation and treatment for the injury occurred because Plaintiff failed to follow the advice of the

nurses at the dispensary window to file a sick call slip.

## IV.    Conclusion

For the above stated reasons, the Court will grant enter summary judgment in favor of

Defendants and against Plaintiff.   A separate Order consistent with this Memorandum follows.


<u>June 20, 2007</u>                                       _____/s/_____
Date                                                   William D. Quarles, Jr.
                                                       United States District Judge